# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4434

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| William Joseph Headbird, | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted: June 13, 2006
Filed: August 31, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Following a jury trial, William Joseph Headbird was convicted of one count of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Applying the Armed Career Criminal Act, 18 U.S.C. § 924(e), and considering United States Sentencing Guideline Section 4B1.4, the district court[1] sentenced Headbird to 327 months' imprisonment. Headbird appeals. On appeal, Headbird claims there was insufficient evidence supporting the jury's verdict,

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

contends evidence of his prior convictions was erroneously admitted at trial under Federal Rule of Evidence 609, and alleges a number of flaws regarding the determination of his sentence. We affirm.

I.     Background

On January 1, 2005, Headbird attended a party at Lena Morgan's home in Cass Lake, Minnesota. A fight broke out at the party and Headbird became involved in the fracas. Morgan asked Headbird to leave the party; Headbird left, stating he would be back to "settle it."

About ten or fifteen minutes later, Morgan's home was peppered with gunfire. Nearby officers heard the gunfire and responded to the scene. Deputy William Connor arrived about thirty to forty-five seconds after the last shot was fired. Upon arriving, Deputy Connor observed Headbird holding a long gun. Headbird dropped the gun by his car when he saw Deputy Connor. Deputy Connor ordered Headbird to the ground; Headbird ignored the order, cursed at the deputy, and took flight.

After Deputy Connor apprehended Headbird, he returned to the scene and recovered a .22 caliber rifle from the location where he had observed Headbird drop the long gun. Deputy Connor then entered the Morgan home, where he saw at least thirteen bullet holes in a window and four bullet holes in a door. He recovered four shell casings, which were found to have cycled through the recovered .22 caliber rifle.

Subsequent to Headbird's arrest, he called Amanda Hartgerink from jail on January 2, 2005. During that call, a tape of which was entered into evidence at trial, Headbird admitted to getting caught with a gun and shooting up a house the night before.

At trial, Headbird called Dana Moose as an alibi witness. Moose, who was impeached with his prior felony convictions, testified that Headbird was inside the house when the shots were fired at Morgan's home. Headbird also testified, providing the jury with an alternate account of the evening's events. Headbird denied shooting at Morgan's home, denied possessing or dropping the .22 caliber rifle, stated he ran from Deputy Cooper because he was frightened, and explained his admissions to Hartgerink were lies intended to impress her. Over Headbird's objections, the district court permitted the government to impeach Headbird with his prior felony convictions.

The jury found Headbird guilty of possessing a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court determined Headbird was subject to the enhanced penalty provisions of the Armed Career Criminal Act because Headbird had at least three prior convictions for violent felonies. Additionally, the court found Headbird used or possessed the firearm in connection with a crime of violence, specifically the shooting of an occupied house. As a result, Headbird's advisory guideline range was 262 to 327 months, and the court imposed a term of 327 months.

II.    Discussion

A.    Sufficiency of the Evidence

Headbird appeals the sufficiency of the evidence presented by the government in support of his conviction for possession of a firearm as a felon, alleging there was little evidence showing he possessed the firearm in question. Headbird "confronts a high hurdle with this argument, as we must employ a very strict standard of review on this issue." United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (quotation omitted). In considering the sufficiency of the evidence, we "view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the

government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Blazek, 431 F.3d 1104, 1107 (8th Cir. 2005) (quotation omitted). We will only reverse if no reasonable jury could have found Headbird guilty. United States v. Walker, 393 F.3d 842, 846 (8th Cir. 2005).

To be convicted of being a felon in possession of a firearm a defendant must have previously been convicted of a crime punishable by imprisonment for more than one year and must have knowingly possessed a firearm that had been in or affected interstate commerce. United States v. Brown, 422 F.3d 689, 691-92 (8th Cir. 2005). At trial, Headbird stipulated that he had been convicted of a felony and that the firearm in question had traveled in interstate commerce, making possession the only contested element. Headbird asserts there was insufficient evidence to support the jury's conclusion that he possessed the firearm recovered near his car. Considering the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support the jury's conclusion.

There was more than sufficient evidence presented at trial to demonstrate Headbird possessed the .22 caliber rifle Deputy Connor recovered. Significantly, Deputy Connor saw Headbird drop the gun. While Deputy Connor's testimony at trial was that he saw Headbird drop what appeared to be a long gun, the fact that Deputy Connor recovered the .22 caliber rifle – and not a stick or a bat – from the location where he saw Headbird drop the item reinforces Deputy Connor's testimony. Further, Headbird admitted to Hartgerink that he had been caught with a gun. Finally, the evidence connecting Headbird with the shooting, including the timing between his departure from the party and the shooting, his statement that he would be back to "settle it," his admission to Hartgerink that he shot up a house, and the shells matching the .22 caliber rifle found inside Morgan's home, provide further support for the conclusion that Headbird possessed the firearm.

The jury was entitled to discredit testimony provided by Moose as inconsistent with that of other witnesses, and "in light of impeachment evidence elicited by the government." United States v. Red Bird, 450 F.3d 789, 793 (8th Cir. 2006). A reasonable jury could also disregard Headbird's denial of possession of the firearm and explanation of his statements to Hartgerink as self-serving. See United States v. Howard, 413 F.3d 861, 864 (8th Cir. 2005). We thus conclude there was sufficient evidence to prove beyond a reasonable doubt that Headbird possessed the firearm.

B.      Admission of Prior Conviction Evidence under Rule 609

Headbird contends the district court erred in admitting evidence of his prior convictions for impeachment purposes pursuant to Federal Rule of Evidence 609. Further, Headbird argues the district court erroneously allowed the government to cross-examine Headbird too broadly regarding his prior convictions. Finally, Headbird contends the district court failed to properly instruct the jury on the permissible use of Rule 609 evidence. Headbird argues these alleged errors warrant reversal of his conviction and remand for a new trial. We disagree.

Under Rule 609(a)(1), "evidence that an accused has been convicted of [a crime punishable by death or more than one year in prison] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1). "Whether evidence of a prior conviction should be admitted is left to the discretion of the trial court." United States v. Valencia, 61 F.3d 616, 618 (8th Cir. 1995). Thus, we apply an abuse of discretion standard when considering whether Headbird's prior convictions were properly admitted for impeachment purposes. United States v. Chauncey, 420 F.3d 864, 874 (8th Cir. 2005).

Prior to trial Headbird moved in limine to prevent admission of evidence of Headbird's prior convictions under Rules 404(b) or 609; Headbird argued the

evidence of the convictions was unduly prejudicial. In ruling before trial, the district court granted Headbird's motion as to Rule 404(b), but stated it likely would admit the evidence for impeachment purposes under Rule 609, should Headbird decide to take the stand. After Headbird testified on direct, the government sought and was specifically granted permission to question Headbird about his prior convictions. The court so ruled after a sidebar at which defense counsel restated concerns about the prejudicial effect of the evidence of Headbird's prior convictions.

The district court did not abuse its discretion in admitting evidence of Headbird's prior convictions for impeachment purposes. First, the district court's exclusion of the evidence under Rule 404(b) is irrelevant to its subsequent ruling regarding Rule 609. Valencia, 61 F.3d at 619. Further, while the district court did not make a specific on-the-record determination as to the balancing of the probative value and prejudicial effect of the admission of the convictions under Rule 609, the context of its rulings demonstrates it considered this necessary factor. See United States v. Key, 717 F.2d 1206, 1208-09 (8th Cir. 1983) (holding that despite a lack of an on-the-record finding regarding the balancing test, the bench conference regarding the prejudice and probative value immediately prior to the ruling foreclosed a conclusion that the court abused its discretion). Credibility was a key factor in the jury's consideration of the case. Defense and government witnesses presented contradictory testimony regarding possession of the firearm, and possession was the only contested element of the offense. Headbird's prior convictions were highly probative of his credibility "because of the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." Chauncey, 420 F.3d at 874 (quotation omitted). Considering the record as a whole, we cannot conclude the district court abused its discretion in admitting Headbird's prior convictions for impeachment purposes.

Additionally, the scope of the cross examination regarding Headbird's convictions was proper. The government elicited little beyond the fact and nature of

Headbird's prior offenses.  See United States v. Moore, 735 F.2d 289, 293 (8th Cir. 1984) (stating that both the fact and nature of a defendant's conviction may be used for impeachment purposes).  The limited additional information presented was drawn out in response to Headbird's statement denying recollection of a conviction.  When a defendant denies guilt, or otherwise minimizes his culpability for an offense, a more detailed cross examination is permissible.  See United States v. Amahia, 825 F.2d 177, 180 (8th Cir. 1987).  Because of Headbird's denial, the district court was within its discretion to allow more specific questions.  Moreover, Headbird did not contemporaneously object to the questioning, and it was not plain error to allow the additional evidence.  See United States v. Whitetail, 956 F.2d 857, 861 (8th Cir. 1992) (explaining that plain error review applies when an appeal is based upon admitted evidence not objected to at trial).

Finally, although counsel failed to object to the jury instructions at trial, Headbird now alleges the court erred in instructing the jury regarding the use of the evidence of his prior convictions.  Because there was no objection, we review the instructions for plain error.  United States v. Rice, 449 F.3d 887, 894 (8th Cir. 2006).

The relevant instruction stated: "The testimony of a witness may be discredited or impeached by evidence showing that the witness has been convicted of a felony . . . . Prior convictions of a crime that is a felony is one of the circumstances which you may consider in determining the credibility of that witness."  Although the instruction is not specifically tailored to a defendant's testimony, it is a correct statement of the law and provides guidance to the jury as to the permissible use of the prior conviction evidence.  Thus, we find no error in the instruction and certainly no plain error.

C.    Sentencing

Headbird appeals the district court's determination of his sentence, on a number of grounds.  On all issues related to Headbird's sentence, we affirm the district court.

In considering all of Headbird's sentencing claims, we review the district court's factual findings for clear error and its application of the Sentencing Guidelines to the facts de novo. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005).

As an initial matter, Headbird alleges the district court erred in increasing his sentence based upon judicial findings regarding the fact and nature of his prior convictions and the aggravating circumstances surrounding his firearm possession. We have previously rejected these arguments. See United States v. Johnson, 408 F.3d 535, 540 (8th Cir. 2005) (noting that the Supreme Court has not overruled Almendarez-Torres v. United States, 523 U.S. 224 (1988), and that Shepard v. United States, 544 U.S. 13 (2005), did not alter the rule that a district court may consider prior criminal history in fashioning a sentence); United States v. Patterson, 412 F.3d 1011, 1015-16 (8th Cir. 2005) (explaining that once a court determines a prior conviction exists, it properly considers the legal question as to the offense's characterization as a violent felony); United States v. Pirani, 406 F.3d 543, 552 n.4 (8th Cir. 2005) (noting that sentencing enhancement determinations need not be submitted to a jury and that "[n]othing in Booker suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime"); United States v. Marcussen, 403 F.3d 982, 984 (8th Cir. 2005) (holding that neither the existence or nature of a prior conviction need be proven to a jury beyond a reasonable doubt for sentencing enhancement purposes).

Next, Headbird asserts the district court erred in finding that his prior convictions for escape and theft of a vehicle qualified as crimes of violence under the Armed Career Criminal Act and Guidelines section 4B1.2. We have previously held that a conviction for escape, regardless of the facts and circumstances surrounding the escape, qualifies as a crime of violence for purposes of applying the Armed Career Criminal Act and section 4B1.2. United States v. Abernathy, 277 F.3d 1048, 1051 (8th Cir. 2002) ("[E]scape is always a violent crime."); United States v. Nation, 243 F.3d 467, 472 (8th Cir. 2001) (noting that "every escape, even a so-called 'walk away'

escape, involves a potential risk of injury to others" and concluding that escape convictions qualify as crimes of violence). Likewise, we have held that a conviction for theft of a vehicle qualifies as a crime of violence for sentencing enhancement purposes. United States v. Johnson, 448 F.3d 1017, 1018 (8th Cir. 2006); United States v. Sun Bear, 307 F.3d 747, 753 (8th Cir. 2002). Thus, the district court did not err in finding that Headbird's prior convictions for theft of a vehicle and escape constituted crimes of violence and sentencing Headbird pursuant to the Armed Career Criminal Act and U.S.S.G. §4B1.4.[2]

Finally, Headbird alleges there was insufficient evidence to support the court's finding that Headbird used or possesed a firearm in connection with a crime of violence. Considering the evidence presented at trial, the district court did not err in concluding Headbird possessed a firearm in connection with a crime of violence and therefore determining Headbird's offense level pursuant to U.S.S.G. §4B1.4(3)(A). The evidence discussed above that demonstrated possession of the firearm also supports the finding regarding the use of the firearm. Briefly, the evidence supporting the court's conclusion included: Deputy Connor's testimony that he saw Headbird hold and then drop what appeared to be a long gun thirty to forty-five seconds after he heard shots fired, that he recovered a .22 caliber rifle from the location where he saw Headbird drop the long gun, that he found seventeen bullet holes in the Morgan home, and that the four shell casings found at the scene were found to have cycled through the recovered .22 caliber rifle; Lena Morgan's testimony that shots were fired at her home ten to fifteen minutes after she had kicked Headbird out of a party and he threatened to return and "settle it"; and Headbird's recorded telephone admission to

_____

[2]Because we conclude that Headbird was properly sentenced as an armed career criminal using U.S.S.G. §4B1.4, Headbird's claim regarding the obstruction of justice enhancement is moot and therefore will not be addressed.

Amanda Hartgerink that he shot at a house. Further, the district court based its determination in large part on its conclusion that the evidence presented by the government witnesses at trial was credible, while the alibi evidence offered by Headbird was not, a conclusion that "is virtually unreviewable on appeal." United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002).

For the forgoing reasons, we affirm the district court on all points.

_____