# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1457

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Christopher Clifford Collier, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: December 10, 2007
Filed: June 6, 2008

_____

Before BYE, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Christopher Clifford Collier appeals from the district court's[1] judgment, entered upon a jury's verdict, finding him guilty of the offense of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Collier appeals the district court's ruling that the nature of his predicate felony, the sale or receipt of an access card to defraud, was admissible as impeachment evidence if he testified. He also appeals the district court's rejection of his motion for a new trial, alleging an

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

inconsistency between the jury verdict and the district court's ruling at sentencing. We affirm.

## I.

Christopher Clifford Collier is an interstate truck driver based in San Diego, California; in a 1998 Freightliner FLD 120 that he owns, he moves household goods across the country. On September 30, 2005, Collier was stopped at an open port of entry in South Dakota for a routine inspection, which showed that he was three days behind in his trucker's log book entries. A check of Collier's commercial driver's license revealed that his license was revoked in California. The revocation later proved to be a mistake and his license was reinstated. But Collier was arrested at the time because driving with a revoked license is a class 1 misdemeanor offense in South Dakota.

The South Dakota Highway Patrol trooper conducted an inventory search of Collier's truck and found a handgun in the truck's sleeper berth, below the mattress level and not visible. The trooper returned the gun to the cab of the truck after determining that the gun was not stolen or used in a crime. But upon a check of Collier's criminal record, the trooper discovered that Collier had been charged with a felony in the past and was therefore potentially ineligible to possess a firearm. The trooper informed the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

The ATF determined that Collier had been convicted of a felony and was therefore prohibited from possessing firearms. At the ATF's request, a South Dakota Highway Patrol sergeant retrieved the gun from Collier's truck. The ATF determined that the gun had traveled in interstate commerce because it had been manufactured in Italy and imported into the United States through Morgan, Utah.

On December 16, 2005, Collier returned to South Dakota to retrieve his truck. There, he was met by two ATF agents, one of whom was Agent Mehlhoff. Although they advised Collier that he did not have to speak with them and was free to leave, Collier voluntarily agreed to speak with them. According to Agent Mehlhoff, when asked if he knew why ATF agents would want to talk with him, Collier replied that it was probably about the gun. He then admitted that he was the owner of the gun, that he had purchased it two years earlier in Los Angeles, and that he carried it for protection because he often carried cash with him on the road and knew of friends who had been robbed.

Prior to trial, Collier filed a motion in limine to exclude prior convictions except for the predicate felony of the sale or receipt of an access card to defraud and to prohibit evidence about the nature of the predicate felony. Concerning the latter, he argued that because he and the government had stipulated to the fact of his conviction for the predicate offense, the jury would already know of it and could take this into account in assessing his credibility. Therefore, allowing evidence about the nature of the felony would unfairly prejudice him without adding anything of probative value.

The district court ruled that if Collier testified, both the fact and nature of his predicate felony for credit card fraud would be admissible to impeach because it was "a crime of dishonesty that bears upon credibility." Additionally, the district court determined that admitting evidence of this prior conviction was not "highly prejudicial" because "as felonies go it is not a very serious felony." The court determined that on balance, the relevance to Collier's credibility outweighed the "limited prejudicial effect" of the evidence.

Collier chose to testify at trial. Agent Mehlhoff testified that Collier admitted that the gun found in the truck was his. Collier then took the stand and contradicted his own initial account of the events he gave Agent Mehlhoff, saying that he had never

seen the gun before he saw it being removed from his truck and that he lied to Agent Mehlhoff because "the truth wasn't believable" and thought that if he told the truth, he would have been taken to jail. Collier also stated that during a typical month, up to forty different workers have access to the sleeper berth area in his truck.

The jury found Collier guilty of possessing a firearm after previously being convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At sentencing, the district court denied the government's motion for an enhancement for obstruction of justice, concluding that the government failed to show by a preponderance of the evidence that Collier perjured himself when he denied knowing about the gun.

II.

Collier asserts that the district court erred in denying his motion in limine that sought to exclude the nature of his credit card conviction as unfairly prejudicial. When considering whether evidence concerning Collier's prior conviction was properly admitted for impeachment purposes, we apply an abuse of discretion standard of review. United States v. Headbird, 461 F.3d 1074, 1078 (8th Cir. 2006).

The government argues that a plain error standard of review applies in this case because Collier failed to renew his objection to the admission of evidence at trial after his motion in limine had been overruled. However, "once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(a). Here, the district court made a definitive ruling that if Collier testified, the nature of his predicate felony was admissible for impeachment purposes because it was relevant to his credibility and its probativeness outweighed any prejudicial effect. Therefore, an abuse of discretion standard applies in this case.

Federal Rule of Evidence 609(a)[2] provides two avenues for admitting a defendant's prior convictions for impeachment purposes. Under Rule 609(a)(1), a crime punishable by death or more than one year in prison "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Under Rule 609(a)(2), crimes that involve dishonesty or false statement are admissible, regardless of the punishment. (Both sections are subject to limitations not relevant here).

Although the district court did not explicitly state under which subsection the evidence of Collier's predicate felony conviction was admissible, an examination of the record indicates that it admitted the evidence under both Rule 609(a)(1) and (a)(2). It admitted the evidence as "a crime of dishonesty that bears upon credibility," and because "as felonies go[,] it is not a very serious felony," not "particularly prejudicial," and "the probative aspect of it outweighs what limited prejudicial effect it has."

Evidence of Collier's predicate felony is admissible under Rule 609(a)(2) as an act of dishonesty or false statement by the witness. According to the Advisory Committee Notes on the 1990 Amendment to Rule 609(a)(2), by "dishonesty and false statement," the Conference Committee meant "crimes such as perjury, subornation or perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Collier's predicate conviction was for the sale or receipt of an access card to defraud, and Collier has conceded that this conviction included the statutory element of intent to defraud. A crime that includes the statutory element of intent to

---

[2]Collier's trial occurred on November 2, 2006, before the 2006 amendment to Rule 609 took effect on December 1, 2006. Therefore, the prior version of rule applies, but the changes are not material to this case.

defraud by definition involves some element of deceit, which would bear upon one's propensity to testify truthfully. Crimes containing a statutory element requiring proof of deceit are considered acts of dishonesty or false statement under Rule 609(a)(2). 3 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, <u>Federal Rules of Evidence Manual</u> § 609.02[4] (LexisNexis 9th ed. 2006).

Collier contends that Rule 609 does not deprive the district court of its discretion under Rule 403 to exclude otherwise relevant evidence if unfair prejudice outweighs the probative value. Collier is mistaken as to Rule 609(a)(2). Evidence of a conviction requiring proof or admission of an act of dishonesty or false statement is automatically admissible and not subject to Rule 403 balancing by the court. <u>Green v. Bock Laundry Mach. Co.</u>, 490 U.S. 504, 525-56 (1989) ("With regard to subpart (2) [of Rule 609(a)], which governs impeachment by <u>crimen falsi</u> convictions, it is widely agreed that this imperative, coupled with the absence of any balancing language, bars exercise of judicial discretion pursuant to Rule 403.") (superceded on other grounds by 1990 Amendment to Rule 609(a)). <u>See</u> <u>United States v. Sumner</u>, 119 F.3d 658, 662-63 (8th Cir. 1997) (citing <u>Jones v. Bd. of Police Comm'rs</u>, 844 F.2d 500, 505 (8th Cir. 1988) ("Under subsection (2) [of Rule 609(a)], a conviction (felony or misdemeanor) involving dishonesty or false statement is, subject to the ten-year limit imposed by Rule 609(b), always admissible; there is no balancing to be done.")); <u>Federal Rules of Evidence Manual</u> at § 609.02[3].

Evidence of Collier's predicate felony was also admissible under Rule 609(a)(1) as a felony whose probative value outweighed its prejudicial effect to the accused. The district court conducted the balancing prescribed by Rule 609(a)(1) and held that prejudice did not outweigh probativeness. Collier stipulated that his 1996 conviction for credit card fraud was a felony. We have previously held that prior convictions are highly probative of credibility "because of the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." <u>United States v. Chauncey</u>, 420 F.3d 864, 874

(8th Cir. 2005) (internal quotation marks omitted). Collier's credibility was at issue in this case because the jury heard two contradictory versions of whether Collier knowingly possessed the firearm. Agent Mehlhoff testified that Collier admitted to possessing the firearm located in the truck. Collier then testified that he did not know about the firearm found in the truck and that the story he told Agent Mehlhoff was a lie. Because the jury had to consider such contradictory versions on the only contested element of the charge against Collier, permitting evidence relevant to his credibility regarding a felony that is not highly prejudicial, was reasonable and not an abuse of discretion.

Finally, the government elicited little beyond the fact and nature of the conviction. The only additional information the government solicited was the amount of restitution Collier paid. This was in response to Collier's attempt to minimize culpability during direct examination when he described his predicate felony as "petty theft, or grand larceny" having to do with a credit card, and stated the amount of loss as "about four hundred dollars." On cross examination, the government established the amount of restitution ordered as $2,097. When an accused, on direct examination, attempts to minimize his guilt or culpability, a more detailed cross examination is permissible. Headbird, 461 F.3d at 1078. Here, the scope of the cross examination concerning Collier's predicate conviction did not go beyond facts Collier testified to during his direct examination.

Because the evidence was plainly admissible under either rule, and because both the fact and nature of a defendant's conviction may be used for impeachment purposes, see United States v. Moore, 735 F.2d 289, 293 (8th Cir. 1984) (per curiam), we see no abuse of discretion by the district court in admitting either the initial evidence regarding credit card fraud or in permitting cross examination.

III.

Collier contends that the district court erred in denying his motion for a new trial and that the weight of the evidence does not support the jury's guilty verdict. We review for abuse of discretion a district court's decision to grant or deny a new trial on the ground that the verdict is contrary to the weight of the evidence. United States v. Smart, 501 F.3d 862, 865 (8th Cir. 2007), cert. denied, 128 S. Ct. 1258 (2008). Federal Rule of Criminal Procedure 33(a) authorizes a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." In ruling on a motion for a new trial, a district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and evaluate for itself the credibility of the witnesses. United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). If the district court concludes the evidence "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." United States v. Johnson, 474 F.3d 1044, 1051 (8th Cir. 2007) (quoting United States v. Anwar, 428 F.3d 1102, 1109 (8th Cir. 2005)). This authority, however, should be exercised sparingly and with caution. United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).

To convict Collier under 18 U.S.C. § 922(g)(1), the government had to prove beyond a reasonable doubt (1) a previous conviction for a crime punishable by imprisonment over one year and (2) knowing possession of a firearm (3) that was in or affected interstate commerce. Because Collier stipulated to the first element and did not contest the ATF agents' conclusion that the firearm found in Collier's truck had traveled in interstate commerce, the only issue at trial was whether he knowingly possessed the firearm.

In this case, the jury verdict could reasonably have rested on the testimony of Agent Mehlhoff, to whom Collier admitted ownership of the gun found in his truck.

Mehlhoff testified that Collier admitted that he bought the firearm two months earlier from a person identified as Emmett for $125 in Los Angeles and that he carried the gun for protection because he carries a lot of currency with him and he had known friends who had been robbed before. Collier testified that he admitted ownership of the gun to Agent Mehlhoff, but that it was a lie. In light of Collier's shifting story, and when compared to the specific and detailed account provided by Agent Mehlhoff, it was reasonable for the jury to believe Mehlhoff's account over Collier's. Also, circumstantial evidence supported the jury's verdict. The gun was found in the truck Collier drove and owned. Even if a large number of people had access to Collier's truck, it is unlikely, as the district court noted, for a person who had no interest in the truck to abandon such a valuable pistol there. The district court was well within its discretion in holding that the evidence did not weigh in Collier's favor.

Collier contends that the district court's denial of an obstruction of justice enhancement for perjury at sentencing is inconsistent with the jury verdict and that this inconsistency presents a serious miscarriage of justice warranting a new trial.

The obstruction of justice provision in the Sentencing Guidelines provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. A finding of perjury supports an enhancement under this Guideline. United States v. Thundershield, 474 F.3d 503, 507 (8th Cir. 2007).

Collier argues that if the prosecution failed to prove at sentencing, under the preponderance of the evidence standard, that Collier perjured himself when he denied

knowing about the gun, then the jury could not have found beyond a reasonable doubt that Collier was not testifying truthfully when he said he did not know about the gun. This proposition does not follow as a matter of logic. Perjury entails not only false testimony, but an additional element of intent; to find Collier committed perjury, the district court would have had to find, by a preponderance of the evidence, that the defendant gave "'false testimony concerning a matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" United States v. Ziesman, 409 F.3d 941, 956 (8th Cir. 2005) (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)). A jury's disbelief of a defendant's testimony does not compel a district court to find that the defendant committed perjury. See United States v. Flores, 362 F.3d 1030, 1038 (8th Cir. 2004) ("This case illustrates the line dividing the jury's disbelief of a defendant's testimony and a district court's finding of perjury. . . . [T]he jury's disbelief of [defendant]'s testimony is not the equivalent of a finding by the district court that he committed perjury."). Conversely, a district court's finding of no perjury does not mean that a witness's testimony was true.

Even though a finding of no perjury does not logically compel the conclusion that the testimony was true, Collier argues that the district court in this case specifically found that his testimony was true. Collier relies on something the district court said in denying the government's obstruction of justice motion:

> I would think that the likelihood in the Court's mind at this point is that it could well be that what the defendant told the ATF agent [i.e., that he owned the gun] is true, but on the other hand as I have already indicated, his explanation of how he thought he could maybe skate through this thing does make some sense. So in that sense it passes the smell test, which as I say can be stated more elegantly, but I don't find that it is shown by a preponderance of the evidence that the testimony was perjured when he said that it wasn't his gun and that the reason he told the ATF that it was, was as he explained that he thought maybe he could skate by by telling them what they expected to hear.

(emphasis added).

-10-

Collier argues that the first highlighted passage amounts to a finding that his trial testimony was true. To the contrary, review of the entire hearing transcript shows that the district court expressed skepticism over the veracity of Collier's testimony. In finding that the verdict was not against the weight of the evidence, the district court used the very same words repeated above–that Collier's story at trial "makes some sense:" "So the motion for a new trial is denied, the burden that must be met has not been met, even though the defendant's explanation is, it does make some sense." In that same discussion, the district court said, "I didn't say it was probable [that Collier's testimony was true], I said his explanation makes some sense." We cannot interpret the same words ("makes some sense") a few pages later as a finding of fact contradicting the court's earlier conclusion that Collier had not shown the verdict was against the weight of the evidence. We conclude that the meaning of the passage on which Collier relies, though somewhat obscure, is that the government failed to prove perjury, as the district court ultimately concluded in the second highlighted passage. As we have already pointed out, a finding of no perjury does not contradict the jury's verdict.

## IV.

We recognize, as did the district court at sentencing, the positive changes Collier has made in his life and acknowledge the sad facts of a long sentence. Nevertheless, for the foregoing reasons, we affirm the judgment of the district court.

_____