# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1555

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | South Dakota. |
| John Michael Jumping Eagle, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: December 11, 2007
Filed: February 4, 2008

_____

Before COLLOTON, BEAM, BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

A jury convicted John Michael Jumping Eagle on two counts of aggravated sexual abuse, within Indian country, in violation of 18 U.S.C. §§ 2241(c), 2246(2)(A), 2246(2)(C), and 1153. The victim was Jumping Eagle's eight-year-old nephew, J.J. Jumping Eagle now appeals his conviction, raising numerous issues. For the reasons stated below, we reject Jumping Eagle's contentions and affirm the district court.[1]

## I.    BACKGROUND

_____

[1]The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota.

In 2002, Jumping Eagle lived in Manderson, South Dakota, with his parents. During the summer, Jumping Eagle's nephew, J.J., started regularly visiting his grandparents, Jumping Eagle's parents. On these visits, J.J. would help one of his aunts with her children as well as play games with Jumping Eagle. At night, J.J. slept on a couch in his grandparents' living room while Jumping Eagle slept on a different couch in the same room.

At trial, J.J. gave the following account. One night, while he was sleeping on the couch, he awoke to find his pants pulled down, and he felt "someone" (or "something")[2] inside of him. The feeling was painful. Jumping Eagle was on top of him, holding his mouth shut, preventing him from screaming. While Jumping Eagle held his hands, Jumping Eagle inserted "something" into his anus. He fought to get Jumping Eagle off of him, but to no avail. Finally, however, he was able to let out a scream. When he screamed, Jumping Eagle got off him and returned to his couch.

After the assaults,[3] J.J. experienced mental, emotional, and physical problems. For instance, he began feeling sad and unhappy and also experienced encopresis, or involuntary defecation. J.J. eventually told his mother what Jumping Eagle had done, after which J.J.'s mother took him to a doctor and a social service worker called the police. Approximately two weeks after J.J. told his mother, he visited Black Hills Pediatrics, where Dr. Lori Strong evaluated him for signs of sexual assault. Before Dr. Strong examined J.J., Lora Hawkins, a forensic investigator, interviewed J.J. In this interview, J.J. stated that Jumping Eagle sexually assaulted him on several occasions while he was visiting his grandparents.

---

[2]On direct examination, J.J. first testified that he felt "someone" inside of him. Later in his direct examination, and again on cross-examination, J.J. testified that he felt Jumping Eagle putting "something" inside of him. We will use "something" throughout the remainder of this opinion.

[3]J.J. testified at trial that Jumping Eagle sexually assaulted him on four different occasions. The government did not charge Jumping Eagle with these other assaults.

Soon after J.J. disclosed the sexual abuse to his mother, FBI Special Agent Richard Lauck interviewed Jumping Eagle in Manderson. Jumping Eagle initially denied J.J.'s allegations, but later confessed to digitally penetrating J.J.'s anus in the mistaken belief that J.J. was his girlfriend. At the conclusion of the interview, Jumping Eagle memorialized his confession in writing. Several weeks after Jumping Eagle confessed to Agent Lauck, FBI Special Agent Kelly Kenser interviewed Jumping Eagle. During this interview, Jumping Eagle again admitted to digitally penetrating J.J.'s anus. Jumping Eagle also confessed to placing his penis on J.J.'s buttocks and inserting it into J.J.'s anus. At Agent Kenser's behest, Jumping Eagle agreed to repeat his confession while Agent Kenser tape recorded it. On tape, Jumping Eagle only admitted to placing his penis on J.J.'s buttocks.

Following the FBI's investigation, a grand jury indicted Jumping Eagle on two counts of aggravated sexual abuse. Jumping Eagle pled not guilty, and after a three-day trial, the petit jury convicted Jumping Eagle on both counts. Jumping Eagle now appeals his conviction, arguing the district court erred: (1) by abandoning its gatekeeping function and admitting expert testimony that speculated as to causation; (2) by admitting two different hearsay statements; (3) when it permitted the government to employ several improper impeachment techniques; (4) by permitting the government to make certain remarks during its closing argument, denying him a fair trial; and (5) when it denied his motion for judgment of acquittal. Because we find that the district court did not commit reversible error, we affirm.

## II.    DISCUSSION

### A.    Expert Witness

Jumping Eagle first challenges the district court's decision to admit Dr. Strong's expert testimony. He argues that the district court failed to require the government to establish an adequate foundation for Dr. Strong's testimony about the cause of J.J.'s encopresis. We disagree.

We review a district court's ruling admitting expert testimony under Federal Rule of Evidence 702 for an abuse of discretion. In re Air Crash at Little Rock, Ark. on June 1, 1999, 291 F.3d 503, 509 (8th Cir. 2002). Rule 702 permits a district court to admit the testimony of a witness whose knowledge, skill, training, experience, or education will assist a trier of fact to understand the evidence or determine a fact in issue, if the testimony is both relevant and reliable. Fed. R. Evid. 702; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-91 (1993). There is, however, no requirement that the district court always hold a Daubert hearing before qualifying an expert witness under Rule 702. United States v. Evans, 272 F.3d 1069, 1094 (8th Cir. 2001).

In child sexual abuse cases, "a qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits." United States v. Kirkie, 261 F.3d 761, 765-66 (8th Cir. 2001) (internal quotations omitted). An expert can also summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse. Id. at 766. An expert, however, cannot express an opinion that sexual abuse has in fact occurred or vouch for the victim. Id.

In the instant case, the government designated Dr. Strong as its expert, and during a pre-trial conference, Jumping Eagle asked the district court to exclude her

testimony regarding certain medical conditions suffered by J.J., such as whether the sexual abuse caused J.J.'s encopresis, or in the alternative, to hold a <u>Daubert</u> hearing to ascertain whether Dr. Strong's testimony regarding causation was supported by reasonable medical certainty. The district court denied both requests and allowed Dr. Strong to testify.

Dr. Strong testified that J.J. had no abnormalities in his penis area or in his anal area, but that this lack of abnormalities was not inconsistent with J.J.'s statement that the last assault occurred nearly three months earlier. Dr. Strong also testified that encopresis is a nonspecific historical finding of abuse, meaning there are other reasons encopresis may occur. Dr. Strong further testified that when a child exhibits a litany of nonspecific findings of abuse, such as problems at school, fighting, encopresis, and uresis–all characteristics J.J. exhibited–doctors become concerned that the underlying problem may be less dietary and more emotionally based or tied to abuse. Dr. Strong never stated that sexual abuse occurred in this case or that J.J.'s encopresis was caused by sexual assault; rather, she only provided testimony regarding characteristics of sexually abused children in general and how they compared with the characteristics exhibited by J.J. This is allowed under our precedent. <u>See, e.g.</u>, <u>Kirkie</u>, 261 F.3d at 765; <u>United States v. Whitted</u>, 11 F.3d 782, 785 (8th Cir. 1993). Accordingly, the district court did not abuse its discretion by admitting Dr. Strong's testimony.

## B.     Evidentiary Issues

Jumping Eagle also challenges several of the district court's other evidentiary rulings. A district court has broad discretion in the admission of evidence and we will overturn its decisions only if it abuses its discretion. <u>United States v. Beason</u>, 220 F.3d 964, 968 (8th Cir. 2000). When, however, a defendant fails to object to the admission of evidence at trial, we review for plain error. <u>United States v. Pirani</u>, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Under plain-error review, the defendant has the burden to prove that there was (1) error, (2) that was plain, and (3) that affected

substantial rights.  Id. (citing United States v. Olano, 507 U.S. 725, 732-36 (1993)). If all three conditions are met, we may then exercise our discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

### 1.    Hearsay

Jumping Eagle's next evidentiary challenge relates to the district court's failure to exclude two hearsay statements, neither of which were objected to when offered. A hearsay statement is a statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  Unless a hearsay statement falls within an exception, it is generally inadmissible at trial.  Thus, the unfettered admission of a hearsay statement is usually error.   Nevertheless, it is fundamental that where a defendant "opens the door" or "invites error," there can be no reversible error.  Beason, 220 F.3d at 968.  Accordingly, we have allowed the use of otherwise inadmissible evidence, including hearsay statements, to clarify, rebut, or complete an issue opened up by defense counsel on cross-examination.  Id.

The first hearsay statement involves an out-of-court conversation between J.J. and his mother, Mandy, during which J.J. told his mother about the sexual abuse. Jumping Eagle first brought up this conversation during Mandy's cross-examination, when he queried: "[J.J.] told you that this had happened over 20 times to him, didn't he?" During redirect of Mandy, the government asked her what J.J. had told her about the abuse.  Jumping Eagle's inquiry of Mandy, opened the door, permitting further evidence of the conversation between Mandy and J.J.  As a result, the district court did not commit reversible error by admitting the testimony.

The second hearsay statement involves double hearsay;  specifically, J.J.'s out-of-court statement to a forensic investigator about the type of sexual abuse that

occurred in this case.  The forensic investigator repeated J.J.'s statement to Special Agent Lauck, who testified at trial.  The government again contends Jumping Eagle first opened the door.  While this presents a close evidentiary issue, we are inclined to agree with the government.  During Special Agent Lauck's cross-examination, Jumping Eagle questioned Agent Lauck about how he got Jumping Eagle to confess in the face of Jumping Eagle's initial denials.  Lauck responded that he was able to do so because he articulated to Jumping Eagle the evidence he had gathered that caused him to believe Jumping Eagle assaulted J.J.  This evidence, he stated, included J.J.'s interview with the forensic interviewer, during which J.J. described the sexual abuse.  Later during Agent Lauck's cross-examination, Jumping Eagle inquired:  "[u]p until then you had been talking to him [Jumping Eagle] about more specifically than just sexual contact, that, '[i]t was alleged that you [Jumping Eagle] had anal sex with J.J.; your [Jumping Eagle's] penis his anus?'"  As a result of the questions Jumping Eagle posed to Agent Lauck during his cross-examination, Jumping Eagle opened the door to the government's question: "[w]hat type of sexual abuse had [J.J.] described in that forensic interview?"  The district court may well have prohibited an answer to this inquiry without committing error.  But, on the other hand, under the circumstances, the court did not plainly err by admitting J.J.'s out-of-court statement.

### 2.    Confrontation Clause

Regarding the second hearsay statement–J.J.'s statement to the forensic interviewer–Jumping Eagle also makes a Confrontation Clause challenge.  Because Jumping Eagle did not raise a Confrontation Clause objection to this testimony at trial, we review for plain error.  United States v. Rodriguez, 484 F.3d 1006, 1013 (8th Cir. 2007).

The Confrontation Clause bars the admission at trial of the testimonial statements of a witness who is absent from trial, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine him.  Crawford v.

<u>Washington</u>, 541 U.S. 36, 53-54 (2004). A defendant's right to confront and cross-examine witnesses against him, under the Confrontation Clause, applies to those who bear testimony against him, which is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." <u>Id.</u> at 51 (alteration in original) (internal quotations omitted). Thus, only testimonial statements implicate a defendant's confrontation rights. Statements made to a forensic interviewer are testimonial statements. <u>United States v. Bordeaux</u>, 400 F.3d 548, 556 (8th Cir. 2005). Statements taken by police officers in the course of interrogations are also testimonial. <u>Id.</u>

Here, even if the district court erred by admitting J.J.'s statements to the forensic investigator by way of Agent Lauck's trial testimony, we need not reverse, as Jumping Eagle failed to make a showing of prejudice. Indeed, J.J., the original declarant, appeared at trial, and was subject to cross-examination about his statements to the forensic interviewer. What is more, Jumping Eagle also cross-examined J.J. on a number of other issues. In short, Jumping Eagle's Confrontation Clause claim fails.

### 3.    Impeachment

Jumping Eagle next argues that the government improperly impeached him and another defense witness. We also review a district court's ruling on the admissibility of impeachment evidence for an abuse of discretion. <u>United States v. Headbird</u>, 461 F.3d 1074, 1078 (8th Cir. 2006). Under Federal Rules of Evidence 403 and 611, district courts have discretion to limit or block questioning that is unfairly prejudicial, beyond the scope of direct examination, or unrelated to credibility. Fed. R. Evid. 403, 611.

Regarding the government's impeachment of Jumping Eagle, Jumping Eagle contends the government tried to prejudice the jury against him by improperly

questioning him about drinking alcohol before being injured in a car accident and his failure to cooperate with authorities in the prosecution of the other car's driver. Jumping Eagle challenges this line of questioning under Federal Rules of Evidence 401 and 403.

Here, the district court did not err in permitting the government's questioning of Jumping Eagle regarding the accident. Under Rule 401, whenever a defendant testifies at trial, his credibility becomes relevant. See United States v. New, 491 F.3d 369, 378 (8th Cir. 2007). During Jumping Eagle's direct examination, he testified that he had never met an FBI agent. On cross-examination, the government questioned whether this testimony was true. Specifically, the government asked if he met Special Agent Bill Grode when he was in the hospital for injuries relating to the car accident. Jumping Eagle replied that he had, but that he did not know Agent Grode was with the FBI. The government then queried whether Jumping Eagle was drunk the night he spoke with Agent Grode. The district court properly allowed this line of questioning. It related to Jumping Eagle's credibility, specifically his perception of events on the night of the car accident. Moreover, because Jumping Eagle mentioned the accident and that he had never met an FBI agent before this case, the government's questioning was appropriate to correct the jury's impression that Jumping Eagle had never before dealt with an FBI agent. See United States v. Womochil, 778 F.2d 1311, 1315 (8th Cir. 1985) (holding the district court did not abuse its discretion in allowing the government to clarify the false impression created by the defendant on cross-examination).

As to Jumping Eagle's Rule 403 argument, he did not properly preserve it. A general objection to "relevance" is not sufficient to preserve an objection under Rule 403. United States v. Mejia, 909 F.2d 242, 246 (7th Cir. 1990). Jumping Eagle's trial counsel made a general relevance objection, i.e., he did not specifically object under Rule 403. Thus, we review for plain error. Jumping Eagle has not shown how his

substantial rights were affected by the district court's ruling admitting this testimony; therefore, his claim fails.

Jumping Eagle also challenges the district court's ruling permitting the government's line of questioning regarding the propriety of inserting a finger into a female's anus. He challenges this testimony only under Rule 401. The district court did not abuse its discretion by allowing this inquiry. On direct examination, Jumping Eagle testified that he told Agent Lauck he inserted his finger in J.J.'s anus because he thought it was his girlfriend. On its cross-examination of Jumping Eagle, the government questioned Jumping Eagle on the propriety of inserting a finger into a female's anus. As the government's questioning could help the jury assess the credibility of Jumping Eagle's statement to Agent Lauck about why he assaulted J.J., the district court did not abuse its discretion by allowing the interrogation.

Next, Jumping Eagle contends the government failed to follow Federal Rule of Evidence 609 in its impeachment of defense witness, Phillip LaBatt. Specifically, Jumping Eagle argues that the government (1) improperly questioned LaBatt by asking whether he had been convicted of a felony or a crime of moral turpitude, (2) failed to give proper notice of its intention to use a prior conviction, and (3) failed to give the district court an opportunity to apply a Rule 403 analysis.

Rule 609 allows a party to offer evidence of a witness' prior conviction for purposes of attacking the witness' character for truthfulness, if the prior conviction was for a crime punishable by death or imprisonment in excess of one year under the applicable law. Fed. R. Evid. 609. And if the conviction (or the release of the witness from the confinement imposed for that conviction) occurred more than ten years before trial, the court must determine whether the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect, and the party offering the evidence must give his opponent advance written notice. Id.

Here, without the foundation required by Rule 609, the government inquired of LaBatt whether he had been convicted of a felony or a crime of moral turpitude. This was error. But because Jumping Eagle did not object at trial, we review for plain error. In this regard, Jumping Eagle fails to show or even argue that his substantial rights were affected. What is more, evidence of the prior conviction could have been admissible had the government phrased the question in accordance with the terms of Rule 609.[4] Accordingly, Jumping Eagle's argument fails.[5]

## C. Closing Arguments

Jumping Eagle contends that the government's closing argument denied him a fair trial because it unlawfully appealed to the passion and prejudice of the jury, misrepresented the evidence, and constituted an improper attack on Jumping Eagle's counsel. We address each contention in turn. Because Jumping Eagle failed to object to any of the government's remarks during closing argument, we review for plain error.

Prosecutorial misconduct during closing arguments may result in the reversal of a conviction. To determine whether prosecutorial misconduct has occurred, we apply a two-part test: first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's

---

[4]This assumes that LaBatt's conviction was not punishable by less than death or imprisonment of one year, an argument Jumping Eagle did not make at trial and does not make on appeal.

[5]Jumping Eagle's other Rule 609 complaints also fail. Jumping Eagle has never argued that the witness' prior conviction occurred more than ten years before the trial. Thus, the government was not required to give Jumping Eagle notice of its intention to use the conviction. Additionally, the district court was not required to explicitly apply Rule 403; rather, Rule 609 permits the admission of a prior conviction "subject to Rule 403." There is no showing that the district court in any way abandoned this "subject to" requirement.

substantial rights by depriving the defendant of a fair trial.  New, 491 F.3d at 377.  In order to determine whether the defendant was deprived of a fair trial, we consider the following three factors: (1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions, if any, taken by the district court.  Id.

A prosecutor must limit the closing argument to the evidence and the reasonable inferences that may be drawn from it.  United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001).  And it is well established that appeals to the passion, prejudice, or sympathy of jurors during closing argument are improper, and may be grounds for reversal.  Viereck v. United States, 318 U.S. 236, 247 (1943).  For instance, "an emotional appeal calculated to persuade the jury to decide the case on other than the facts before it" is prohibited.  United States v. Lee, 743 F.2d 1240, 1253 (8th Cir. 1984).  Also condemned are arguments urging "'jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking,'" United States v. Johnson, 968 F.2d 768, 771 (8th Cir. 1992) (quoting United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir. 1984)), at least where the comments are intended to inflame the jury.  See United States v. Fields, 72 F.3d 1200, 1208 (5th Cir. 1996).  Nonetheless, a prosecutor may use "colorful pejoratives" and argue a personal interpretation of the evidence.  White, 241 F.3d at 1023.

Jumping Eagle first takes issue with the following remarks:

> What do you call it . . . when an eight-year-old boy wakes up in the middle of the night feeling pain in his butt and he turns to find his uncle laying on top of him?  What do you call it when that little boy is moving and squirming and doing everything that a little boy, an eight-year-old boy, can do to get this man off his back?  What do you call that kind of fear that must have been going through his head at the moment? What do you call it . . . when that little boy feels his uncle's finger going in his butt?  What kind of devastation happens to a little boy at the age of eight by those kinds of actions that his whole world falls apart?  What do you

call it?  You call it sodomy.  You call it aggravated sexual abuse of a child.

Trial Transcript at 435-36.   In this case, we do not find that the prosecutor's closing argument warrants reversal.  The prosecutor did not engage in any arguments we have held improper. Each statement in this excerpt was supported by evidence, or at a minimum, a reasonable inference from the evidence, adduced at trial.  In sum, the government's closing argument did not improperly impassion or prejudice the jury.

Jumping Eagle also argues that the government misrepresented the evidence by declaring that the location of the assault, the identity of the assailant, and the identity of the victim were not disputed.  This argument is without merit.  Although whether a sexual assault occurred was in dispute, there was no disagreement as to where the alleged assault occurred, who the alleged assailant was, or who the alleged victim was.  Furthermore, each of the government's representations was supported by the evidence presented at trial.  For example, the government offered Jumping Eagle's confessions and J.J. testified that the assault occurred in Manderson.  In short, the government made no misrepresentations.

The last argument Jumping Eagle makes pertaining to closing argument relates to the government's alleged attacks at Jumping Eagle's counsel.  Specifically, Jumping Eagle states that the government made two overt suggestions to the jury that his defense counsel was dishonest and about to mislead the jurors.  Jumping Eagle challenges the following two statements made by the government in its closing argument:

(1)  "[d]on't you find it just a little interesting, this is just fascinating, that they are so desperate and they just beat up on these FBI agents," and

(2) "[s]o I will get to speak to you after [defense counsel] is finished.  And as I notice behind me, he has a very high tech program to show you.  I want you to ask

yourself as you are watching it what is the purpose of this? Is the purpose of this to help us with making our decision or is it merely made to distract us?"

Trial Transcript at 441, 446. Jumping Eagle also alleges the government, in its rebuttal, accused defense counsel of "picking on" the government's witnesses.

This circuit does not condone "unsubstantiated attacks on the character and ethics of opposing counsel." United States v. Holmes, 413 F.3d 770, 775 (8th Cir. 2005). Nevertheless, not all attacks constitute reversible error. Id. at 774. To obtain a reversal, the defendant must show that (1) the prosecutor's remarks were improper, and (2) the remarks prejudiced the defendant's rights in obtaining a fair trial. New, 491 F.3d 377. A district court's instruction that closing arguments are not evidence is a curative action that serves to alleviate any risk of prejudicial impact. United States v. Robinson, 110 F.3d 1320, 1326-27 (8th Cir. 1997). Additionally, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." United States v. Young, 470 U.S. 1, 11 (1985).

Here, the government's remarks during closing argument may well have been improper, as they questioned defense counsel's honesty and referred to defense counsel's efforts to distract the jury, actions we have previously found to be improper. See Holmes, 413 F.3d at 775; Cline v. United States, 395 F.2d 138, 141 (8th Cir. 1968). Nevertheless, when the government's remarks are viewed cumulatively, the remarks did not likely affect the jury's decision given the strong evidence against Jumping Eagle, including his confession. Moreover, the district court's instruction to the jury that closing arguments are not evidence alleviated any harm caused by the government's remarks. Thus, Jumping Eagle's argument fails.

-14-

**D.     Motion for Judgment of Acquittal**

Jumping Eagle lastly contends that the district court erred in denying his motion for judgment of acquittal because there was no evidence to corroborate his confession, a requirement under our case law. When reviewing the denial of a motion for judgment of acquittal, we review the facts in the light most favorable to the government, giving the government the benefit of all reasonable inferences that might be drawn from the evidence. United States v. Starcevic, 956 F.2d 181, 183 (8th Cir. 1992). In determining whether a motion for judgment of acquittal should have been granted, "[a]n appellate court should consider the same quantum of evidence that was presented to the trial court . . . even if some of the evidence was inadmissible." United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir. 2005) (internal quotations omitted). An error in the admission of evidence may warrant a new trial without the disputed evidence, but if the evidence admitted at the first trial was sufficient to support a conviction, the defendant is not entitled to a judgment of acquittal. Id.

After a careful examination of the record, we reject Jumping Eagle's contention. Jumping Eagle is right that under our jurisprudence, an accused may not be convicted on his own uncorroborated confession. Smith v. United States, 348 U.S. 147, 152 (1954). Thus, "[a]ll elements of the offense must be established by independent evidence or corroborated admissions." Id. at 156. Corroborative evidence, however, does not have to prove the offense beyond a reasonable doubt, or even a preponderance of the evidence, so long as there is substantial independent evidence that the offense has been committed. Id.

Here, Jumping Eagle confessed to FBI agents that he sexually assaulted J.J. by penetrating J.J.'s anus with both his finger and penis. J.J.'s trial testimony that Jumping Eagle inserted "something" in his anus serves as corroborating evidence of the sexual assaults. As a result, the district court did not err in denying Jumping Eagle's motion for judgment of acquittal.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's decision.

_____