# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-2988

———————

United States of America,       *
      *
      Appellee,       *
      *    Appeal from the United States
      v.       *    District Court for the
      *    Southern District of Iowa.
Carl Deon Shinn,       *
      *
      Appellant.       *

———————

Submitted: March 15, 2012
Filed: June 12, 2012

———————

Before WOLLMAN and COLLOTON, Circuit Judges, and HICKEY,[1] District Judge.

———————

WOLLMAN, Circuit Judge.

A jury convicted Carl Deon Shinn of one count of attempting to induce a child to engage in criminal sexual activities, in violation of 18 U.S.C. § 2422(b) (2006). He was sentenced to sixty-three months' imprisonment. Shinn appeals from his conviction and sentence, arguing that the district court[2] erred in refusing to instruct

———————

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

the jury on the defense of entrapment, that the evidence was insufficient to support his conviction, and that his sentence is unreasonable. We affirm.

## I. Background

Lieutenant Donald Smock of the Black Hawk County Sheriff's Department was assigned to the Iowa Internet Crimes Against Children Task Force. As a member of the task force, Smock participated in undercover investigations to locate sexual predators on the Internet. Smock would enter Iowa chat rooms, pose as a teenage girl, and await contact from other individuals in the room. On February 16, 2006, Smock entered an Iowa romance chat room for adults, meaning that he had confirmed that he was at least eighteen years old. Despite that confirmation, Smock used the pseudonym "Danni S." and posed as a fourteen-year-old girl from Waterloo, Iowa. Danni's profile displayed a time regressed picture of a female officer, who was actually twenty-five years old but looked much younger in the picture.

Shinn initiated contact with Danni that afternoon.[3] Shinn asked whether Danni went to school or was working. Danni replied that she attended high school and that she was "only 14." Shinn told Danni that he was forty-five years old and that he lived in south central Iowa. After engaging in small talk about school and family, Shinn wrote, "too bad ya don't have a single aunt that looks like you and she lived acrost the street." After some further exchanges, Shinn told Danni, "too bad your not older," "your too young," "your not 18," "all guys are pervs including me," and "if you was

---

[3]At oral argument, defense counsel disputed whether Shinn or Smock initiated the first conversation, noting that the transcript begins with a message from Danni. In the first line of the transcript, Danni wrote, "npe . . . danni," which is a response to a comment or question. Smock testified that the chat archiving device he used did not capture the first two or three lines of any initial chats with other parties. He further testified that Shinn contacted Danni first and that it was Smock's practice to enter a chat room and wait to be contacted.

older I might be a little differnt." When Danni asked what he meant by the last statement, Shinn replied, "well if you was older I'd probly take you out for supper or something and if you attacked me I'd not fight it. your a beautiful girl but you're just too young. . . . you want to stay a virgin for as long as possible." Danni then playfully indicated that she was not a virgin.

Shinn initiated another conversation with Danni on March 11, 2006. After chatting, the two played an Internet game. Shinn suggested, "lets play for kiss's . . . payable in 3yrs 6 months." After Danni lost two games, Shinn told her that interest would accumulate on the debt and the "winner gets to call where the kiss has to be placed." Shinn asked where Danni would have him kiss her, to which she replied, "my cheek." Shinn responded with an emoticon[4] of the "cheeks" located on one's backside and told her that he would have her kiss those "cheeks" as payment on the debt. Later, he wrote, "when you turn 18 I'll plant the kiss you won fair and sqare anywhere you wish it to be planted . . . if you was of age I'd take pleasure in making you feel good." During their next conversation, Shinn reiterated that he was "not joking I'd kiss you anywhere you pointed your finger no mater where it was on you that you pointed." The conversation then turned into a lengthy discussion regarding oral sex, Danni's sexual experience, and Shinn's sex acts with an ex-girlfriend.

Shinn and Danni continued to chat until early May 2006. Throughout their later conversations, Shinn expressed his desire to meet Danni, as well as his fear that her parents or school would discover their relationship. He repeatedly confirmed Danni's age and birth date, asked whether she was an undercover officer, and instructed her to avoid archiving their chat history. Shinn recognized that a sexual relationship with a minor was a crime, often hedging the description of his sexual

---

[4]An emoticon is "a group of keyboard characters (as :-)) that typically represents a facial expression or suggests an attitude or emotion and that is used esp. in computerized communications." Merriam-Webster's Collegiate Dictionary 408 (11th ed. 2003).

desires with "if it wasn't illegal" or "if you was 18." Shinn described on multiple occasions the oral sex acts he wanted to perform on Danni. Shinn also called the number that Danni had given him as her home telephone number, and he spoke to a female officer. Eventually, Shinn sent Danni pictures of himself wearing only underwear.

On April 15, 2006, Shinn asked Danni "what side of town you live on" and said "can't believe I was actually thinking about opening a map of waterloo." He talked about the route he would take to Waterloo and what Danni should wear to avoid attracting attention to herself. When Danni asked whether they could take a walk together, Shinn replied that they could and said "but me drive all the way to waterloo for a walk in the park?" The conversations about Shinn traveling to Waterloo continued throughout late April and early May. Shinn asked multiple questions about the details of their proposed meeting: whether Danni could spend the day away from her parents without raising concern, whether there was a motel nearby, whether Danni could keep their meeting a secret. Shinn explained how to time their meeting to avoid pregnancy and he often described the sex acts they would perform. According to Smock, Danni gave Shinn "outs": that is, Danni sometimes would divert sexual conversations to something unrelated or, when the conversation turned to meeting in person, Danni would mention the risk involved or the illegality of a sexual encounter.

On April 30, 2006, Shinn proposed that he travel to Waterloo the following weekend. On May 2, Shinn asked how to let Danni know which room he booked, and he reminded her of the disguise she should wear on the day of their meeting. On May 4, Shinn said he was "thinking about a trip . . . [to] wloo . . . possibly tomorrow." Shinn and Danni then finalized the details of their meeting, and on May 5, Shinn sent Danni a message indicating the room number, the telephone number, and the time he would arrive at the motel, around 4:30 p.m.

At approximately 4:00 p.m., on May 5, 2006, Sergeant Larry Wessels drove to the designated motel in Waterloo, Iowa, to conduct surveillance. When he arrived, he found Shinn's car parked in the lot.[5] A few minutes later, Shinn exited the motel and returned to his car. Wessels, who was wearing plain clothes and driving an unmarked vehicle, approached Shinn and asked what he was doing at the motel. Shinn claimed that he was there to meet an old girlfriend. He also said that he had been talking to "some other girl that lived in this area" and planned to meet her, too.

Wessels placed Shinn under arrest. A search of Shinn's car revealed the presence of eight condoms, a digital camera, an 8-millimeter camera, a video camera, blank video tapes and compact discs, and a note with the name "Danni" that listed her supposed home phone number and address. Another condom was found in Shinn's wallet. Later that day, Smock interviewed Shinn, who made numerous admissions, including that he knew that Danni was fourteen years old.

Smock later conducted a forensic examination of Shinn's computer. Other than Shinn's chats with Danni, Smock found no chats involving minors. He also found no child pornography and no searches for websites containing child pornography.

The government called three witnesses at trial: Smock, Wessels, and the female officer who had assisted in the investigation. The government entered into evidence the transcripts of the chat conversations and the photographs that Shinn and Danni had exchanged. After the government rested and again before the case was submitted to the jury, Shinn moved for judgment of acquittal, arguing that the evidence was insufficient to convict and that the evidence established entrapment as a matter of law. Both motions were denied. The district court also denied Shinn's

---

[5]In the days leading up to the proposed meeting, Smock had used subpoenas and public record searches to identify Shinn's name and vehicle. He also secured a warrant for Shinn's arrest.

request for an entrapment instruction, finding that the evidence did not warrant such an instruction.

Under the U.S. Sentencing Guidelines Manual, Shinn's advisory sentencing range was sixty-three to seventy-eight months' imprisonment. Shinn moved for a downward variance and requested a sentence of sixty months' imprisonment, the mandatory minimum sentence under 18 U.S.C. § 2422(b) (2006). Shinn argued that his lack of criminal history, his difficult childhood, and the week he served in county jail should serve as the basis for the requested variance. The district court denied the motion and sentenced Shinn at the bottom of the advisory guidelines range.

## II. Discussion

### A. Entrapment Instruction

Shinn challenges the district court's denial of his proffered jury instruction on the defense of entrapment. "[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988). "We review the district court's denial of a proffered legal defense de novo." United States v. Young, 613 F.3d 735, 743 (8th Cir. 2010).

"[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews, 485 U.S. at 63. "Inducement focuses on the government's actions, whereas predisposition 'focuses on whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime.'" United States v. Myers, 575 F.3d 801, 805 (8th Cir. 2009) (quoting Mathews, 485 U.S. at 63). We have described the elements as "often closely linked," explaining that "the need for greater inducement

-6-

may suggest that the defendant was not predisposed to commit the crime; and conversely, a ready response to minimal inducement indicates criminal predisposition." Id.

Shinn argues that the following evidence was sufficient to show inducement: the chat was initiated in an adult romance chat room; Smock initiated several of the chats; and Smock portrayed Danni as a sexually precocious teenager, who encouraged Shinn to meet her in person. Shinn also argues that the government produced no evidence of predisposition, pointing to the fact that, other than the chats with Danni, no inappropriate chats, files, or searches were found on his computer. When considered in the context of the remainder of the evidence presented at trial, however, we conclude that these facts were not sufficient to warrant an entrapment instruction.

Shinn has failed to produce sufficient evidence to show inducement. The evidence showed that Shinn initiated the first five chats with Danni. See supra note 3. Danni immediately disclosed during the first conversation that she was a fourteen-year-old high school student. By the end of that conversation, Shinn had raised the topic of Danni's sexuality, telling her that "you want to stay a virgin for as long as possible." Shinn initiated the second extended chat, set forth in detail above, during which he suggested they play games for kisses. Shinn also initiated the third extended chat. He asked questions about Danni's physical appearance, described the sex acts he wanted to perform, and described in great detail his past sexual encounters. By the time Smock initiated a chat with Shinn, Shinn had already engaged in numerous sexually graphic discussions with Danni, even though he repeatedly had confirmed that she was a fourteen-year-old girl. Smock's portrayal of Danni as an interested and curious teenager certainly presented an opportunity for Shinn to break the law, but it did not "implant[] the criminal design" in Shinn's mind. See Young, 613 F.3d at 747 (quoting United States v. Eldeeb, 20 F.3d 841, 843 (8th Cir. 1994)). Nor was there any evidence that Smock threatened, coerced, or psychologically manipulated Shinn during the course of the undercover investigation.

See Myers, 575 F.3d at 806-07 (recounting cases in which the government induced the defendant to commit the crime).

The government's evidence established that Shinn readily availed himself of the opportunity to perpetrate the crime, thus showing his criminal predisposition. As recounted above, Shinn broached the idea of an in-person meeting in Waterloo. He made travel arrangements, explained their plan to avoid detection by her parents, and proposed that he record their sexual encounter. Shinn also ignored the so-called "outs" Smock had given him to abandon the meeting or turn their conversations to innocuous topics. Shinn took with him condoms and recording devices, drove to Waterloo, and arrived at the designated motel, sending Danni the room number and telephone number. Shinn showed little if any reluctance in engaging in sexual conversations with Danni, and his only hesitation with their meeting was the risk that they might be discovered. See United States v. Herbst, 666 F.3d 504, 512 (8th Cir. 2012) (concluding that the following evidence established the defendant's predisposition: defendant initiated sexual conversations with the putative victims, suggested sexual activities, and proposed meeting in person). That a forensic search of Shinn's computer revealed no child pornography, history of enticing minors, or related Internet searches does not negate the fact that he proposed, planned, and attempted to bring about an in-person meeting for the purpose of engaging in a sexual encounter with a minor. In the face of the government's evidence, Shinn failed to introduce evidence to warrant a finding by a reasonable jury that he had been entrapped. The district court thus did not err in denying Shinn's requested entrapment defense instruction.

## B. Sufficiency of the Evidence

Shinn argues that the evidence was insufficient to convict him of attempting to induce a child to engage in criminal sexual activity. "We review the sufficiency

of the evidence de novo, viewing the evidence in the light most favorable to the jury's verdict." Young, 613 F.3d at 742.

To convict a defendant of inducing a child to engage in criminal sexual activity, the government must prove beyond a reasonable doubt that the defendant:

> (1) used a facility of interstate commerce, such as the internet or telephone system; (2) knowingly used the facility of interstate commerce with intent to persuade or entice a person to engage in illegal sexual activity; and (3) believed that the person he sought to persuade or entice was under the age of eighteen.

Id. (quotations omitted). Attempt requires an intent to commit the predicate offense and conduct that is a substantial step towards the crime's commission. Id.

Shinn argues that the government failed to prove intent to commit the crime. "In attempted enticement of a minor cases, the defendant's intent can be inferred when the defendant has online conversations of a sexual nature with a minor." Id. (citing United States v. Patten, 397 F.3d 1100, 1102-03 (8th Cir. 2005)). The transcripts of the chats revealed that Shinn engaged in sexually explicit chats, described the sexual acts he wanted to perform, placed a phone call to the putative victim, arranged for an in-person meeting at a motel, carried a note with Danni's name and contact information, and traveled to the hotel, carrying condoms and recording devices. Moreover, in his post-arrest interview, Shinn admitted that he knew what he was doing was wrong and that he would condemn someone else for doing the same thing. The evidence was sufficient to establish Shinn's intent.[6]

---

[6]To the extent Shinn denies that he initiated the first chat with Danni, we note that the chat transcript and Smock's testimony established that Shinn initiated contact. See supra note 3. Even if Shinn had not initiated the first conversation, Shinn's intent to induce a child to engage in sexual activity was clear from the series of chats with Danni, whom he believed to be a fourteen-year-old girl.

Shinn also argues that the evidence was insufficient to establish that he took a substantial step towards committing the crime. A defendant takes a "substantial step" when he takes actions "necessary to the consummation of the crime that were of such a nature that a reasonable observer, viewing the actions in context could conclude that the actions were undertaken in accordance with a design to commit the actual offense." Id. at 743 (quotations and alterations omitted). A reasonable observer could conclude that Shinn's actions in traveling more than two hours to the designated motel, sending the putative victim the motel information, and carrying with him condoms and recording devices constituted a substantial step taken to commit the actual offense.

## C. Sentence

Shinn contends that the district court failed to consider his difficult childhood and his minimal criminal history in imposing a guidelines-range sentence. The record reveals that the district court considered Shinn's request for a downward variance, but simply declined to grant it. The district court heard defense counsel's arguments regarding Shinn's family and criminal history, considered the details set forth in Shinn's presentence investigation report, and referred to Shinn's criminal history immediately before imposing sentence. We find no abuse of discretion in the district court's imposition of Shinn's sentence and conclude that the sentence is reasonable. See Gall v. United States, 552 U.S. 38, 51 (2007) (setting forth the standard of review for sentences and allowing appellate courts to apply a presumption of reasonableness to within-guidelines-range sentences).

## III. Conclusion

The conviction and sentence are affirmed.

_____

-10-