# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1096
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Harcrow

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: December 16, 2024
Filed: April 29, 2025
[Published]
_____

Before SMITH, GRUENDER, and STRAS, Circuit Judges.
_____

PER CURIAM.

A jury convicted Christopher Harcrow of enticement of a minor, in violation of 18 U.S.C. § 2422(b). The district court[1] sentenced Harcrow to 120 months' imprisonment, followed by 10 years' supervised release. Harcrow appeals, arguing

_____

[1]The Honorable Kristine G. Baker, Chief Judge, United States District Court for the Eastern District of Arkansas.

that the evidence was insufficient to sustain the conviction. He also argues that he was entrapped as a matter of law, that there was a variance from the indictment, and that he was denied his right to a fair trial because of a misstatement of law by a government witness and inflammatory remarks made during closing arguments. We affirm.

## I. *Background*

In June 2017, Chad Meli, an investigator for the Faulkner County Sheriff's Office in Arkansas, located a Craigslist ad in the casual encounters section of the website seeking out young boys interested in spanking. Meli, posing as a 15-year-old named "Connor," contacted Harcrow. When "Connor" first told Harcrow that he was 15, Harcrow broke off contact, but he then resumed contact 12 days later to inquire when "Connor" would turn 16. Harcrow and "Connor" continued discussing spanking as well as further sexual contact, such as anal and oral sex. Harcrow and "Connor" continuously discussed plans to meet up, how they could conceal their relationship, and the various sex acts that they could do together.

Harcrow and "Connor" came up with a plan to meet on June 27, 2017. When Harcrow arrived, law enforcement surrounded his vehicle and arrested him. During an inventory search of Harcrow's vehicle, law enforcement found a grocery bag containing a personal lubricant with a receipt showing that it was purchased just prior to arriving at the meeting location.

Harcrow was then charged with one count of enticement of a minor, in violation of 18 U.S.C. § 2422(b). The indictment charged that "[f]rom on or about June 5, 2017, through on or about June 27, 2017," Harcrow "did knowingly attempt to persuade, induce, entice and coerce an individual, J.D., who had not yet attained the age of 18 years, to engage in any sexual activity for which a person can be charged with [sexual assault in the fourth degree] in violation of A.C.A. § 5-14-127." R. Doc. 1.

Prior to trial, the government filed a motion in limine to foreclose the defense of entrapment, but ultimately the district court gave the jury instruction. During trial, Meli testified that the casual encounters section of Craigslist is often used for anonymous sexual contacts. Meli testified that if Harcrow had sexual contact or sexual activity with "Connor," it would have been sexual assault in the fourth degree under Arkansas law. He also testified that spanking itself is not a crime but that spanking done for the purpose of sexual gratification is sexual conduct under Arkansas law.

After the close of the government's case, Harcrow moved for judgment of acquittal, which the district court denied. The jury then found Harcrow guilty of one count of enticement of a minor, and the district court sentenced Harcrow to 120 months' imprisonment, followed by 10 years' supervised release.

## II. *Discussion*

On appeal, Harcrow alleges four reversible errors. First, he argues that the district court erred in denying his motion for acquittal based on the sufficiency of the evidence. Specifically, he alleges that the government failed to prove beyond a reasonable doubt that Harcrow had the specific intent to persuade, induce, entice, or coerce "Connor" to engage in illegal sexual activity. He also denies that the record shows that he took a substantial step toward committing the crime. Second, he argues that the government's conduct constituted entrapment as a matter of law and that he was not predisposed to commit the charged crime. Third, Harcrow argues that the evidence created a material variance from the indictment. He asserts that the indictment charged him for a crime against "J.D.," while the evidence introduced actually related to "Connor." Fourth, Harcrow alleges that the government misstated the law and made improper, inflammatory remarks during closing arguments that deprived him of his right to a fair trial.

## A. *Sufficiency of the Evidence*

We first address Harcrow's argument that the district court erred in denying his motion for judgment of acquittal based on insufficiency of the evidence. This

court "review[s] de novo the sufficiency of the evidence to sustain a conviction, viewing the evidence in a light most favorable to the verdict and accepting all reasonable inferences supporting the verdict." *United States v. Colton*, 742 F.3d 345, 348 (8th Cir. 2014) (per curiam). This court will overturn a conviction "only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Bell*, 477 F.3d 607, 613 (8th Cir. 2007).

Harcrow was charged with violating 18 U.S.C. § 2422(b), under which the government must prove that the defendant

> (1) used a facility of interstate commerce, such as the internet or telephone system; (2) knowingly used the facility of interstate commerce with intent to persuade or entice a person to engage in illegal sexual activity; and (3) believed that the person he sought to persuade or entice was under the age of eighteen.

*United States v. Joiner*, 39 F.4th 1003, 1008 (8th Cir. 2022) (quoting *United States v. Shinn*, 681 F.3d 924, 931 (8th Cir. 2012)). "A conviction based on attempt requires proof that the defendant intended to commit the predicate offense and conduct that constitutes a substantial step towards the crime's commission." *Id.* (quoting *United States v. Kempter*, 29 F.4th 960, 965 (8th Cir. 2022)). "We look to state law to provide the underlying criminal offense." *United States v. Langley*, 549 F.3d 726, 730 (8th Cir. 2008).

The underlying charge that the government charged Harcrow with was sexual assault in the fourth degree under Arkansas law. Arkansas fourth-degree sexual assault occurs when a person, at least 20 years old, engages in deviate sexual activity or sexual contact with another person that is less than 16 years old and not the person's spouse. Ark. Code Ann. § 5-14-127(a). "Deviate sexual activity" is an

> act of sexual gratification involving:
>
> > (A) The penetration, however slight, of the anus or mouth of a person by the penis of another person; or

-4-

> (B) The penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person.

*Id.* § 5-14-101(1). "'Sexual contact' means: (A) [a]n act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." *Id.* § 5-14-101(12).

Harcrow first argues that the evidence did not establish that he sought out minors to engage in illegal sexual activity. He asserts that the initial advertisement that he placed was not sexual in nature. However, Meli testified that the ad was posted to a section of Craigslist usually used for anonymous sexual contact. Meli additionally testified that spanking could constitute "sexual contact" and that the conversations between Harcrow and "Connor" related to spanking were sexual in nature. Viewing the evidence in a light most favorable to the verdict and accepting all reasonable inferences, Meli's testimony provides sufficient evidence that Harcrow intended the initial ad to ultimately be sexual in nature.

Harcrow next argues that Meli, posing as "Connor," was the one who initiated all the conversations about sex. The evidence presented at trial belies this assertion. After the initial text conversation, Harcrow stated that "Connor" would have to wait to contact him until he was older. Harcrow, however, reinitiated the conversation with "Connor" just 12 days later. He asked "Connor" when he would be 16, as he believed that was the legal age of consent. A reasonable jury could infer from Harcrow's question and his belief that a 16-year-old could consent that Harcrow was interested in having sex with "Connor." It could also conclude that he wanted to know when he would be able to have sex with "Connor." The day after Harcrow reinitiated contact with "Connor," they discussed how they could keep their contact secret. Harcrow, not "Connor," segued the conversation from people discovering their relationship to what they could do together if they met up. R. Doc. 60, at 56–57 (Harcrow: "As far as what all do I want to do, well." Meli, as "Connor," asked: "Huh?" Harcrow: "You would definitely get a spanking session. Anything other than that is relatively up in the air. In five months nothing would be a problem.").

-5-

In a later texting session, Harcrow brought up his age but stated: "When it comes to [sex], that can usually be a problem." *Id*. at 59. Meli, as "Connor," replied: "I don't care." *Id*. Harcrow responded: "As long as you're sure." *Id*. Harcrow brought up anal sex and preparing for anal sex prior to "the real thing." *Id*. at 61. In another conversation, Harcrow stated that he was not totally comfortable with "Connor's" age. Meli, as "Connor," asked, "Okay. Do you wanna do it now or wait till I turn 16?" *Id*. at 64. Harcrow responded: "I would prefer to do it soon, but I would feel better in November. Not sure I want to wait that long because this could be a great thing." *Id*.

Ultimately, these conversations show that "Connor" did not pressure or persuade Harcrow. Harcrow, not "Connor," instigated many of the conversations about sex. Harcrow argues that this evidence is insufficient to show that he acted with a specific intent to "transform or overcome" "Connor's" will or to obtain "Connor's" assent to sexual activity. *See United States v. Hite*, 769 F.3d 1154, 1161 (D.C. Cir. 2014) ("The ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that § 2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor."). However, we have rejected *Hite*'s definition of "persuade, induce, entice, and coerce," and held that "a defendant can be found to persuade or entice even a seemingly willing minor." *United States v. Zupnik*, 989 F.3d 649, 654 (8th Cir. 2021) (internal quotation marks omitted).

*Zupnik* is on point. *Zupnik* held that, in an attempt case, the requisite intent to persuade could be shown even though the minor victim responded to the defendant's online advertisement. *Id*. at 654–55. The court found that the defendant persistently sent messages to the victim with expressions of his sexual interest in her and descriptions of specific sex acts that he would like to perform with her, even after learning that she was under the age of legal consent. *Id*. at 654. Harcrow's interactions with "Connor" are similar, in that "Connor" responded to the ad, but Harcrow consistently indicated that he was sexually interested in "Connor" and described the sex acts that he would perform with him even though Harcrow believed "Connor" was under the age of consent. *See United States v. Riepe*, 858 F.3d 552,

559 (8th Cir. 2017) (holding that the evidence was more than sufficient to establish intent when the defendant "discussed specific sex acts that he would like to perform with [the minor]," "ultimately arranged to meet [the minor]," and "arrived at the specified location"); *see also Shinn*, 681 F.3d at 931 ("In attempted enticement of a minor cases, the defendant's intent can be inferred when the defendant has online conversations of a sexual nature with a minor." (internal quotation marks omitted)).

Harcrow also took a substantial step toward committing the offense. He avers that the conversations with "Connor" show that they could just meet and talk. This court, however, has held that a defendant takes a substantial step toward enticement when the defendant arranges to meet the minor at a particular time and place and travels to the designated meeting place with evident sexual interest. *See United States v. Myers*, 575 F.3d 801, 809 (8th Cir. 2009) (holding that traveling two hours to meet a minor while she was home alone and bringing two boxes of condoms constituted a substantial step); *United States v. Patten*, 397 F.3d 1100, 1104 (8th Cir. 2005) (holding that driving to an arranged meeting place constituted a substantial step in the context of 18 U.S.C. § 2422(b)). Here, Harcrow arranged a meeting place with "Connor" and purchased personal lubricant just a few minutes before the arranged meeting time. This constituted a substantial step towards committing the offense.

Harcrow cannot meet his burden to show that no reasonable jury could have found him guilty beyond a reasonable doubt.

## B. *Entrapment*

We next consider Harcrow's argument that he was entrapped as a matter of law. However, the government argues that he waived this argument below. Waiver excludes appellate review, and "[t]o show a waiver, the government must point to action by the defendant or defense counsel that establishes an intentional relinquishment or abandonment of the right." *United States v. Chavarria-Ortiz*, 828 F.3d 668, 671 (8th Cir. 2016). Below, Harcrow's attorney expressly waived entrapment as a matter of law, stating: "I am not arguing entrapment as a matter of

law. It does not rise to that level to me . . . . [E]ntrapment as a matter of law is not presented." R. Doc. 61, at 127. Harcrow's attorney stated further that "there's text messages that go both ways," so "it's not absolutely clear either way." *Id.* at 143. Thus, Harcrow expressly relinquished his claim as to entrapment as a matter of law.[2]

## C. *Variance from the Indictment*

Harcrow next argues that a variance of the proof at trial from the allegations of the indictment unfairly prejudiced his defense. Specifically, he contends that the indictment listed the fictitious victim as "J.D.," but the evidence at trial showed that the fictitious victim was "Connor." Harcrow did not make this argument below, so we review for plain error. To show plain error, Harcrow has the burden to prove "(1) [an] error, (2) that is plain, and (3) that affects substantial rights" and that "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pirani*, 406 F.3d at 550 (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

"A variance arises when the evidence presented proves facts that are 'materially different' from those [alleged] in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007) (alteration in original) (quoting *United States v. Harris*, 344 F.3d 803, 805 (8th Cir. 2003)). "[A] variance is subject to the harmless error rule." *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir.

---

[2]Harcrow argues that we should hear his argument on appeal despite his waiver due to his claims below of ineffective assistance of counsel. Harcrow acknowledges that this court does not usually entertain claims of ineffective assistance of counsel on direct appeal, so one was not raised. *See United States v. Pherigo*, 327 F.3d 690, 696 (8th Cir. 2003). Even if Harcrow did not waive his claim, it would fail under a plain error review. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). He cannot show that he was induced to commit the crime by the government or that he was not predisposed to entice "Connor." *See United States v. Tobar*, 985 F.3d 591, 592 (8th Cir. 2021). Harcrow placed the initial ad seeking young boys interested in spanking in an area of Craigslist often reserved for anonymous sexual contact and initiated many of the conversations related to sex knowing "Connor" was under the age of consent.

2000). "With regards to a variance, the charging document does not change, only the evidence against which the defendant expected to defend varies, thus the court reviews the variance to determine if defendant's right to notice has been prejudiced, and absent such prejudice, the variance is harmless error." *Whirlwind Soldier*, 499 F.3d at 870 (cleaned up). "The primary consideration . . . is whether the indictment fully and fairly apprised the defendant of the charges he . . . must meet at trial." *United States v. Novak*, 217 F.3d 566, 574 (8th Cir. 2000) (quoting *United States v. Begnaud*, 783 F.2d 144, 148 (8th Cir. 1986)).

The indictment charged that between June 5 and June 27, 2017, Harcrow "did knowingly attempt to persuade, induce, entice and coerce" a minor identified as "J.D." R. Doc. 1. Although "J.D." was used in the indictment consistent with the convention of "John Doe," Harcrow knew before trial that the purported minor, "Connor," was fictitious. The shift from the anonymous J.D. to the fictitious "Connor" did not create a material difference that effected a prejudicial variance affecting his ability to defend against the charge. The indictment specified both the timeframe of Harcrow's communications and described the offense under Ark. Code Ann. § 5-14-127. At trial, the evidence demonstrated that Harcrow had indeed communicated with a fictitious minor during the stated period attempting to persuade, induce, entice, or coerce the fictitious minor. The indictment adequately informed him that he was charged with attempting to persuade, induce, entice, or coerce a fictitious minor to engage in unlawful sexual activity in violation of both Ark. Code Ann. § 5-14-127 and 18 U.S.C. § 2422(b). Under plain error review, Harcrow cannot show an error in the first instance, let alone one that is both plain and affects his substantial rights.

### D. *Right to a Fair Trial*

Lastly, Harcrow alleges that the government misstated Arkansas law and made improper inflammatory remarks during closing arguments, violating his right to a fair trial. In neither instance did Harcrow object, thus our review is under plain error. *See Pirani*, 406 F.3d at 549.

"Prosecutorial misconduct can result in the reversal of a conviction if (1) the prosecutor's conduct or remarks were improper, and (2) the conduct or remarks prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." *United States v. Davis*, 534 F.3d 903, 914 (8th Cir. 2008). The following factors are considered to determine if the defendant was deprived of a fair trial: "(1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions, if any, taken by the district court." *United States v. Eagle*, 515 F.3d 794, 804–05 (8th Cir. 2008). A prosecutor's closing argument must be limited "to the evidence and the reasonable inferences that may be drawn from it." *Id.* at 805. "[A]ppeals to the passion, prejudice, or sympathy of jurors during closing argument" can be grounds for reversal, but prosecutors "may use 'colorful pejoratives' and argue a personal interpretation of the evidence." *Id.* (quoting *United States v. White*, 241 F.3d 1015, 1023 (8th Cir. 2001)).

Harcrow states that the government called him a "predator" during closing arguments and characterized Harcrow's claims that he was just going to talk to "Connor" at the meetup as "preposterous." R. Doc. 61, at 172, 187. Harcrow further contends that during the trial and at closing argument, the government misstated the law as to whether spanking constituted sexual contact under Arkansas law. We conclude that no misconduct occurred.

At trial, during cross-examination, Meli testified that if spanking occurs for sexual gratification, it would constitute sexual conduct under Arkansas law. At closing, the government stated that "[t]he spanking is sexual contact." *Id.* at 188. Harcrow argues that spanking is not per se sexual contact under Arkansas law. He alleges that "sexual contact" under Arkansas law requires touching the "sex organs, buttocks, or anus of a person or the breast of a female," but spanking could be done on other parts of the body. Ark. Code Ann. § 5-14-101(12).

The government's statements during closing arguments were directly related to the evidence and the reasonable inferences drawn from it. During trial and closing

arguments, defense counsel offered innocent explanations for Harcrow's communications with "Connor." In rebuttal, the government countered that Harcrow was "not just being a mentor" but was instead a "predator." R. Doc. 61, at 172. This was a reasonable inference drawn from the evidence and directly related to Harcrow's offered explanations for his behavior. *See United States v. Bentley*, 561 F.3d 803, 811 (8th Cir. 2009) (finding no plain error when prosecutor used the term "sexual predator" as a descriptive phrase that furthered the prosecutor's theory of the case). The word "preposterous" would also constitute a "colorful pejorative" in response to Harcrow's argument in closing that Harcrow's planned meetup with "Connor" was a "let's just talk and see what happens" kind of meeting. R. Doc. 61, at 182. It is also a reasonable inference that the spanking described by Harcrow in his messages with "Connor" specifically described spanking "Connor's" buttocks with his hand for sexual gratification. Given these facts, there is no plain error here.

### III. *Conclusion*

For the foregoing reasons, we affirm Harcrow's conviction and sentence.

_____